**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MAYBORN (UK) LIMITED, MAYBORN USA, INC., MAYBORN GROUP LIMITED, | Civ. A. No. 1:21-cv- |
| *Plaintiffs* | **JURY TRIAL DEMANDED** |
| v. | |
| COMOTOMO INC., COMOTOMO CORPORATION. | |
| *Defendants* | |

**<u>COMPLAINT FOR PATENT INFRINGEMENT</u>**

Plaintiffs Mayborn (UK) Limited, Mayborn USA, Inc., and Mayborn Group Limited (collectively, "Mayborn" or "Plaintiffs") brings this action for patent infringement against Defendants Comotomo Inc. and Comotomo Corporation ("Comotomo" or "Defendants") as follows:

## NATURE OF THE ACTION

1.    This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1, et seq.

2.    Comotomo has infringed (literally and/or under the doctrine of equivalents) and continues to infringe, contribute to the infringement of, and/or actively induce others to infringe U.S. Patents Nos. 10,952,930 ("the '930 patent") and 11,207,244 ("the '244 patent") (collectively, the "Asserted Patents").

## PARTIES

3.    Mayborn USA, Inc. is a corporation organized under the laws of the State of New York with a principal place of business at 1010 Washington Boulevard, Stamford, Connecticut 06901.

4.    Mayborn (UK) Limited is a corporation organized and existing under the laws of England and having a principal place of business at Balliol Business Park, Benton Lane, Newcastle upon Tyne, United Kingdom, NE12 8EW.

5.    Mayborn Group Limited is a corporation organized under the laws of England with a principal place of business at Balliol Business Park, Benton Lane, Newcastle upon Tyne, United Kingdom, NE12 8EW.

6.    Upon information and belief, Defendant Comotomo Inc. is a corporation organized and existing under the laws of the state of California with its principal place of business at 1277

Borregas Avenue, 2nd Floor, Sunnyvale, California 94089.  On information and belief, Comotomo Inc. also maintains an office at 79 Madison Ave., Floor 2, New York, New York 10016.

7.      Upon information and belief, Defendant Comotomo Corporation is a corporation organized and existing under the laws of Korea with its principal place of business at 128 Gasan digital 1-ro, Geumcheon-gu, Seoul, Korea 08507.

## JURISDICTION

8.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. 1331 and 1338(a).

9.      The Court has personal jurisdiction over Comotomo due at least to its continuous business contacts in the State of New York and in this District, including committing patent infringement within the State of New York and this District.  Comotomo also purposefully directed its business activities to this District.  For example, Comotomo Inc. maintains an office at 79 Madison Ave., Floor 2, New York, New York 10016 where, on information and belief, Comotomo commits acts of infringement and aids, abets, or contributes to the infringement of others.  By way of further example, on information and belief, Vice President of Comotomo Inc., Tony Lee, works out of New York.  Comotomo also, directly or through intermediaries (including distributors, retailers, and others) ships, distributes, offers for sale, sells, and advertises its Accused Products in the United States, the State of New York, and this District.  For example, Comotomo Corporation imports the Accused Products into the United States for receipt by Comotomo Inc., and these Accused Products are shipped, distributed, offered for sale, sold, and advertised in the State of New York and this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) at least because Comotomo has committed acts of infringement in this District and has a regular and established place of business in this District.

## STATEMENT OF FACTS

11.     Mayborn has been in the business of creating, making, and selling baby products and delighting parents for nearly 60 years, starting with the original Tommee Tippee no-spill cup in the mid-sixties.  Since then, Mayborn's push for innovation to solve real issues faced by real parents the world over has made Tommee Tippee the #1 baby brand in the United Kingdom and Australia, and in the decade since the brand was launched in the United States, Tommee Tippee became a major player and continues to be a growing baby brand in the United States.

12.     A shining example of Mayborn's innovation is the Closer to Nature ("CTN") line of baby bottles.  The CTN bottles revolutionized the baby industry by being the first to have a real breast-like shape.

13.     Prior to Mayborn's invention of the most-breast-like bottle, baby bottles had a step-like design where the nipple connected with the collar in a traditional shape that did not in any way resemble a breast.  Mayborn's invention reimagined the traditional baby bottle into a bottle that more closely resembles a human breast.  The wide breast-like nipple and collar design with an ultrasensitive built-in air vent makes switching between breast and bottle feeding simpler than with traditional bottles.  The overall breast-like shape is easy for babies to latch on to, feels more like skin, and mimics the natural flex and movement of a mom's breast for a comfortable feed.

| Traditional bottles | Mayborn's breast-like bottle |
|---|---|
|  | |

14.     The CTN bottle is loved by parents and babies alike, winning multiple awards and quickly becoming the gold standard for baby bottle designs.  Since the CTN bottle design was launched, the baby bottle industry has moved away from the traditional bottle shape to copy Mayborn's more breast-like design.

15.     The Asserted Patents are a reflection of the breadth of Mayborn's dedication and investment in the technology and development of innovative products that support and delight parents in the rollercoaster ride of raising a baby.

16.     The Asserted Patents are continuations of a patent family that claims priority to June 29, 2004.

17.     On March 3, 2021, the '930 patent was duly and legally issued for an invention titled "Baby Bottle With Flexible Nipple Regions."  A true and correct copy of the '930 patent is attached hereto as Exhibit A.

18.    On December 28, 2021, the '244 patent, which is a continuation of the '930 patent, was duly and legally issued. A true and correct copy of the '244 patent is attached hereto as Exhibit B.

19.    Mayborn (UK) Limited owns the entire right, title, and interest to the Asserted Patents.

20.    Pursuant to 35 U.S. Code § 287, Mayborn marks its products to provide notice of Mayborn's patent rights to the public.

21.    On information and belief, without license or permission from Mayborn, Comotomo has infringed, literally and/or under the doctrine of equivalents, and continues to infringe, the Asserted Patents by engaging in acts constituting infringement under 35 U.S.C. § 271, including but not necessarily limited to one or more of making, using, selling and offering to sell, in the United States, and importing into the United States, baby bottles having Mayborn's breast-like shape, design, and functionality. In particular, Comotomo's Baby Bottle and substantially similar products and components thereof (the "Accused Products") infringe at least claim 14 of the '930 patent and at least claim 21 of the '244 patent (collectively, the "Asserted Claims").

22.    On information and belief, Comotomo induces infringement of the Asserted Patents by others. For example, Comotomo takes active steps to promote and encourage the sale of the Accused Products by third parties.

23.    Comotomo takes specific steps to actively induce others—such as, for example, retailers and customers—to use the Accused Products. For example, and without limitation, on information and belief, Comotomo actively induces direct infringement of the Asserted Claims of the Asserted Patents by others by promoting, instructing, offering, and encouraging others to use the Accused Products. Furthermore, Comotomo also actively promotes the breast-like nature of

6

the Accused Products including, for example and without limitation, by way of authorized retailers, customer service and sales representatives, and/or its internet sales websites. Such active promotion includes advertising that the Accused Products "mimic breastfeeding to help babies easily transition back and forth from nursing to bottle feeding" and promoting that the Accused Products' "wide mound and a naturally shaped nipple [] help your little one make a seamless switch from breast to bottle." And, on information and belief, Comotomo knows or should know that such sales and promotions actively induce others to directly infringe the Asserted Claims of the Asserted Patents, including for example, by prompting them to sell or use the Accused Products in an infringing manner.

24.    As another example, Comotomo provides and/or authorizes the providing of instruction manuals, product manuals, and other materials (*e.g.*, with the sale of a product and/or offered on its website) for customers and other users of the Accused Products that show how to assemble the Accused Products. On information and belief, Comotomo knows or should know that such materials and instructions actively induce others to directly infringe the Asserted Claims of the Asserted Patents including by instructing them to use the Accused Products.

25.    Furthermore, Comotomo and/or its authorized retailers operate stores throughout the United States, including stores in this District, such as Walmart and Target in New York City, that upon information and belief, sell, promote, and instruct the use of the Accused Products.

26.    On information and belief, Comotomo is aware of the Asserted Patents either by constructive notice as a competitor in the baby products industry, due to Mayborn's marking of its patents to the public, or at least as of July 22, 2021 when Comotomo received notice from Amazon or its retailer partners of its infringement. On information and belief, Comotomo is also aware of the '244 patent because it tracked the prosecution of U.S. Application No. 17/208,932.

**COUNT ONE**
**(Infringement of U.S. Patent No. 10,952,930)**

27.    Mayborn incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

28.    In violation of 35 U.S.C. § 271, Comotomo has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '930 patent, including but not limited to claim 14, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '930 patent. Such unlicensed products include the Accused Products.

29.    Claim 14 of the '930 patent recites: A feeding bottle comprising: a) a vessel having an open top, b) a collar having an upper rim and a lower rim comprising: an internally threaded inner surface, an outermost surface having a sloping portion that extends outwardly and downwardly relative to said upper rim, and wherein said sloping portion comprises a majority of the collar's outermost surface, c) a nipple having: a teat portion having a variable wall thickness including an aperture, a base portion having a domed configuration, an areola portion between the teat portion and the base portion, a flange depending from the base portion, a one-way air inlet valve (i) extending through said base, (ii) projecting downwardly from the base portion, (iii) having a length that does not extend past the collar's lower rim, and (iv) disposed at least partially inwardly from the collar; the flange being arranged to seal with the vessel; d) the nipple being secured to the collar by sealingly capturing an inner edge of the collar between the base portion and the flange; and, e) the nipple being secured to the vessel by capturing the flange of the nipple between the collar and the open top of the vessel.

30.    The Accused Products are feeding bottles comprising a vessel having an open top. For example, the bottles shown below include a vessel having an open top.



31.    The Accused Products have a collar having an upper rim and a lower rim comprising: an internally threaded inner surface, an outermost surface having a sloping portion that extends outwardly and downwardly relative to said upper rim, and wherein said sloping portion comprises a majority of the collar's outermost surface.  For example, the Accused Products have a collar that is either green or pink.  As shown below, the exemplary green collar has an upper rim and a lower rim, where the lower rim comprises an internally threaded inner surface, an outermost surface having a sloping portion that extends outwardly and downwardly relative to said upper rim.  The sloping portion further comprises a majority of the collar's outermost surface.



32.     The Accused Products have a nipple having a teat portion having: a variable wall thickness including an aperture, a base portion having a domed configuration, an areola portion between the teat portion and the base portion, a flange depending from the base portion, a one-way air inlet valve (i) extending through said base, (ii) projecting downwardly from the base portion, (iii) having a length that does not extend past the collar's lower rim, and (iv) disposed at least partially inwardly from the collar; the flange being arranged to seal with the vessel.  For example, the nipple shown below has a teat portion having a variable wall thickness including an aperture as labeled.  The nipple further has a base portion having a domed configuration and an areola portion between the teat portion and the base portion, both shown as labeled below.  The nipple also has a flange depending from the base portion and a one-way air inlet valve extending through said base, projecting downwardly from the base portion, having a length that does not extend past the collar's lower rim, and disposed at least partially inwardly from the collar, as further shown below.  The flange is also arranged to seal with the vessel, as can be seen below.







33.    The nipple of the Accused Products is secured to the collar by sealingly capturing an inner edge of the collar between the base portion and the flange.  For example, the image below demonstrates how the nipple sealingly captures an inner edge of the exemplary pink collar between the base portion and the flange.



34.     The nipple of the Accused Products is secured to the vessel by capturing the flange of the nipple between the collar and the open top of the vessel.  For example, the image below demonstrates how the nipple secures to the vessel by capturing the nipple's flange between the exemplary pink collar and the open top of the vessel.



35.    On information and belief, Comotomo has had knowledge of the '930 patent and that its activities infringe the '930 patent long before the filing of this action.  For example. Comotomo has had knowledge of the '930 patent and has known of the '930 patent and its infringement thereof as a competitor in the baby products industry and due to Mayborn's marking of its patents to the public, and at least since it received actual notice of its infringement of the '930 patent either directly from Amazon or through its retailer partners who sell on Amazon on or around July 22, 2021.  Comotomo received further notice of its infringement when Mayborn sent Comotomo a claim chart for the '930 patent on July 23, 2021.

36.    On information and belief, Comotomo takes active steps to induce infringement of the '930 patent by others, including its retailers, distributors, and customers, and Comotomo takes

such active steps knowing that those steps will induce, encourage and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising (including by internet websites, YouTube videos, print advertisements, etc.), promoting, and instructing others to use and/or how to use the Accused Products.

37.    On information and belief, Comotomo knows or should know that such activities induce others to directly infringe the '930 patent, including for example, by prompting them to assemble the Accused Products in an infringing manner. As such, Comotomo has knowingly induced and continues to induce direct infringement of the '930 patent by its retailers, distributors, and consumers.

38.    On information and belief, Comotomo contributes to the infringement of the '930 patent by others, including its customers. Acts by Comotomo that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Comotomo of the components of Accused Products, including but not limited to, replacement nipples. The components are not suitable for substantial noninfringing use. On information and belief, Comotomo knows such components to be especially adapted to infringe by use with other components to assemble the Accused Products.

39.    Comotomo knew of the '930 patent prior to the filing of this Complaint. For example, Comotomo knew of the '930 patent and performed acts that it knows, or should know, induces and/or contributes to the direct infringement of the '930 patent by third parties.

40.    Comotomo undertook and continues to undertake its egregious infringing actions with knowledge of the '930 patent and despite an objectively high likelihood that such activities infringe the '930 patent, which has been duly issued by the USPTO and is presumed valid. For example, since the date it received notice of infringement, Comotomo has been aware of an

objectively high likelihood that its actions constituted and continue to constitute infringement of the '930 patent and that the '930 patent is valid. Comotomo could not reasonably, subjectively believe that its actions do not constitute infringement of the '930 patent, nor could it reasonably, subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Comotomo has continued its infringing activities. As such, Comotomo willfully infringes the '930 patent.

41.    Comotomo's infringement of the '930 patent has caused and continues to cause damage to Mayborn and Mayborn is entitled to recover from Comotomo compensation as a result of Comotomo's wrongful acts including but not limited to a reasonable royalty and/or lost profits, and such other relief as may be appropriate.

42.    Comotomo's infringement of the '930 patent is exceptional and entitles Mayborn to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT TWO
### (Infringement of U.S. Patent No. 11,207,244)

43.    Mayborn incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

44.    In violation of 35 U.S.C. § 271, Comotomo has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '244 patent, including but not limited to claim 21, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '244 patent. Such unlicensed products include the Accused Products.

45.    Claim 21 of the '244 patent recites: A drinking vessel comprising: a container comprising a varying internal circumference and an opening into the container; and a cover

assembly configured to couple to the container over the opening, the cover assembly comprising: i. a nipple comprising a mouthpiece configured to allow liquid flow through the nipple to an aperture, a flex region configured to allow flex of the mouthpiece towards and away from a lower portion of the nipple, the mouthpiece defining a bite region, and a flange depending from the lower portion of the nipple defining the nipple circumference furthest from the aperture; and ii. a collar configured to removably couple to the nipple to seal over the opening of the container; and wherein the collar and the lower portion of the nipple together define a downward domed shape that extends outwardly and downwardly from the flex region of the nipple towards a widest circumferential edge of the collar.

46.    The Accused Products are drinking vessels comprising a container comprising a varying internal circumference and an opening into the container.  For example, the drinking vessels shown below include a container comprising a varying internal circumference and an opening into the container.



47.     The Accused Products include a cover assembly configured to couple to the container over the opening.  For example, the drinking vessels shown below include a cover assembly comprising a nipple and a collar, which is sold in the colors green or pink.  The cover assembly is configured to couple to the container over the opening, as shown below.



48.    The cover assembly of the Accused Products comprises a nipple comprising a mouthpiece configured to allow liquid flow through the nipple to an aperture, a flex region configured to allow flex of the mouthpiece towards and away from a lower portion of the nipple, the mouthpiece defining a bite region, and a flange depending from the lower portion of the nipple defining the nipple circumference furthest from the aperture.  For example, the cover assembly includes a nipple shown below that comprises a mouthpiece configured to allow liquid flow through the nipple to an aperture.  The nipple further comprises a flex region configured to allow flex of the mouthpiece towards and away from a lower portion of the nipple.  The mouthpiece defines a bite region as shown, and the nipple also comprises a flange depending from the lower portion of the nipple that defines the nipple circumference furthest from the aperture.



49.    The cover assembly of the Accused Products further comprises a collar configured to removably couple to the nipple to seal over the opening of the container.  For example, the exemplary pink collar shown below is configured to removably couple to the nipple to seal over the opening of the container.



50.    In the Accused Products, the collar and the lower portion of the nipple together define a downward domed shape that extends outwardly and downwardly from the flex region of the nipple towards a widest circumferential edge of the collar.  For example, the image below depicts how the exemplary pink collar and the lower portion of the nipple together define a downward domed shape that extends outwardly and downwardly from the flex region of the nipple towards a widest circumferential edge of the collar.



51.    On information and belief, Comotomo has known of the '244 patent and its infringement thereof since the '244 patent issued on December 28, 2021.  For example, Comotomo has had knowledge of the '244 patent and has known of the '244 patent and its infringement thereof as a competitor in the baby products industry and due to Mayborn's marking of its patents to the public.  By way of further example, Comotomo has had knowledge of the '244 patent because, on information and belief, it has been tracking the prosecution of U.S. Application No. 17/208,932 since at least the time it received notice of infringement of the '930 patent.

52.    On information and belief, Comotomo takes active steps to induce infringement of the '244 patent by others, including its retailers, distributors, and customers, and Comotomo takes such active steps knowing that those steps will induce, encourage and facilitate direct infringement by others.  Such active steps include, but are not limited to, encouraging, advertising (including by

internet websites, YouTube videos, print advertisements, etc.), promoting, and instructing others to use and/or how to use the Accused Products.

53.    On information and belief, Comotomo knows or should know that such activities induce others to directly infringe the '244 patent, including for example, by prompting them to assemble the Accused Products in an infringing manner. As such, Comotomo has knowingly induced and continues to induce direct infringement of the '244 patent by its retailers, distributors, and consumers.

54.    On information and belief, Comotomo contributes to the infringement of the '244 patent by others, including its customers.  Acts by Comotomo that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or import by Comotomo of the components of Accused Products, including but not limited to, replacement nipples.  The components are not suitable for substantial noninfringing use.  On information and belief, Comotomo knows such components to be especially adapted to infringe by use with other components to assemble the Accused Products.

55.    Comotomo knew of the '244 patent prior to the filing of this Complaint.  For example, Comotomo knew of the '244 patent and performed acts that it knows, or should know, induces and/or contributes to the direct infringement of the '244 patent by third parties.

56.    Comotomo undertook and continues to undertake its infringing actions with knowledge of the '244 patent and despite an objectively high likelihood that such activities infringe the '244 patent, which has been duly issued by the USPTO and is presumed valid.  On information and belief, Comotomo has been aware of an objectively high likelihood that its actions constituted and continue to constitute infringement of then-pending U.S. Application No. 17/208,932 which issued as the '244 patent and that the '244 patent is valid.  Comotomo could not reasonably,

subjectively believe that its actions do not constitute infringement of the '244 patent, nor could it reasonably, subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Comotomo has continued its infringing activities. As such, Comotomo willfully infringes the '244 patent.

57.    Comotomo's infringement of the '244 patent has caused and continues to cause damage to Mayborn and Mayborn is entitled to recover from Comotomo compensation as a result of Comotomo's wrongful acts including but not limited to a reasonable royalty and/or lost profits, and such other relief as may be appropriate.

58.    Comotomo's infringement of the '244 patent is exceptional and entitles Mayborn to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Mayborn asks this Court to enter judgment in Mayborn's favor and against Comotomo by granting the following relief:

a)    That each of the Asserted Claims of the Asserted Patents have been and continue to be infringed by Comotomo;

b)    That Comotomo's infringement of the Asserted Patents has been willful;

c)    That each of the Asserted Patents is enforceable, eligible for patent protection, and not invalid;

d)    An award of damages adequate to compensate Mayborn for the patent infringement that has occurred, together with pre-judgment interest and costs;

e)    An award of ongoing royalty for Comotomo's post-verdict infringement, payable on each product offered by Comotomo that is found to infringe one or more of the Asserted Patents, and on all future products that are not colorably different from those found to infringe;

f)    In the alternative if no prospective royalty is granted, a permanent injunction preventing further infringement;

g)    An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

h)    A finding that this action is an exceptional case under 35 U.S.C. § 285 and an award to Mayborn of its costs and attorneys' fees incurred in this action; and

i)    Further relief as the Court may deem just and proper.

## **JURY DEMAND**

Mayborn hereby demands trial by jury on all issues.

Dated: January 26, 2022

Respectfully submitted,

**FISH & RICHARDSON P.C.**

By: _____

John S. Goetz
goetz@fr.com
7 Times Square, 20th Floor
New York, New York 10036
(212) 765-5070 (Telephone)
(212) 258-2291 (Facsimile)

Matthew A. Colvin (*pro hac vice to be filed*)
colvin@fr.com
Aaron P. Pirouznia (*pro hac vice to be filed*)
pirouznia@fr.com
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

**COUNSEL FOR PLAINTIFFS
MAYBORN (UK) LIMITED,
MAYBORN USA, INC., AND
MAYBORN GROUP LIMITED**